LeBakken Rent-To-Own, Plaintiff-Respondent,

v.

David J. Warnell, Defendant-Appellant.

Court of Appeals

*No. 98–1569–FT. Submitted on briefs October 21, 1998.—Decided December 8, 1998.*

(Also reported in 589 N.W.2d 425.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel R. Freund* of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel M. Smetana* of Altoona.

Before Cane, C.J., Myse, P.J., and Hoover, J.[1]

CANE, C.J.   This appeal arises out of the dismissal of a replevin action without costs.[2] David Warnell appeals the portion of the dismissal order denying him costs and reasonable attorney fees. Warnell alleged that because his consumer rental agreement with LeBakken Rent-To-Own was a consumer credit transaction under the Wisconsin Consumer Act, chs.

---

[1] This appeal was originally a one-judge appeal; it was converted to a three-judge panel by order on November 25, 1998. *See* RULE 809.41(3), STATS.

[2] This is an expedited appeal under RULE 809.17, STATS.

421–427, STATS.,[3] LeBakken's failure to comply with the pleading requirements of § 425.109(1), STATS.,[4] required that the complaint be dismissed with costs. The trial court ruled that the agreement was not subject to the Act and granted LeBakken's voluntary motion to dismiss without costs. Because we conclude that the matter is a consumer credit transaction subject to the Act, we reverse the order denying costs and remand with directions to award Warnell costs and reasonable attorney fees under § 425.308(1), STATS.

## I. BACKGROUND

The facts are undisputed. In September 1995, LeBakken and Warnell entered into a contract labeled

---

[3] Section 421.101, STATS., provides that "Chapters 421 to 427 shall be known and may be cited as the Wisconsin consumer act."

[4] Section 425.109, STATS., provides, in pertinent part, as follows:

> **Pleadings: (1)** A complaint by a creditor to enforce any cause of action arising from a consumer credit transaction shall include all of the following:
> (a) An identification of the consumer credit transaction.
> (b) A description of the collateral or leased goods, if any, which the creditor seeks to recover or has recovered.
> (c) A specification of the facts constituting the alleged default by the customer.
> (d) The actual or estimated amount of U.S. dollars or of a named foreign currency that the creditor alleges he or she is entitled to recover and the figures necessary for computation of the amount, including any amount received from the sale of any collateral.
> . . . .
> (h) An accurate copy of the writings, if any, evidencing the transaction . . . .

Additionally, § 425.109(3), STATS., provides that "a judgment may not be entered upon a complaint which fails to comply with this section."

"Consumer Rental Agreement." Under the contract, Warnell agreed to make weekly or monthly payments for the use of a refrigerator. The cash price of the refrigerator was $551.08, and the rental period was eighty-seven weeks or twenty months. Warnell could, at his option, terminate the agreement at any time by returning the refrigerator and paying all amounts due through the date of return, while LeBakken could terminate only if Warnell failed to make payments or otherwise breached the agreement. The agreement gave Warnell, whom it identifies as the "renter," the option to make all eighty-seven payments and then purchase the refrigerator for an additional $179.95, meaning that Warnell would have paid $1,102.15 for the refrigerator ($922.20 in rental payments plus the $179.95 purchase price). In addition, the agreement contained an early purchase option by which Warnell could purchase the refrigerator at any time during the lease period if he paid 50% of the difference between the total payments necessary to acquire ownership and the total amount of rental payments paid.

In November 1996, Warnell failed to pay the rental fee or return the refrigerator, and LeBakken filed a pro se form complaint in small claims court for replevin of the refrigerator and money damages. The complaint demanded $747.11 and return of the property and alleged that the "amount due is $91.90 rent, $20.00 late charges, $4.60 tax, $630.61 deferred balance, for a total of $747.11." It is undisputed that the complaint does not comply with pleading requirements in § 425.109(1), STATS., because it fails to contain the figures necessary for computation of the amount LeBakken alleges it is entitled to recover. *See* § 425.109(1)(d), STATS. LeBakken has not amended its complaint.

Warnell filed a motion to dismiss and award attorney fees and costs under §§ 425.302 and 425.308, STATS.[5] His motion alleged that the complaint failed to state a claim upon which relief could be granted because the subject of the suit was a consumer credit transaction and consumer lease and that the complaint therefore failed to comply with the Act's pleading requirements. The court denied the motion and set the case for trial. Before trial, LeBakken filed a motion to voluntarily dismiss with prejudice and without costs,[6] and Warnell renewed his motion to dismiss with costs and attorney fees under the Act. The trial court granted LeBakken's motion, denied Warnell's, and ordered the case dismissed without costs. Warnell appeals.

---

[5] Section 425.302, STATS., provides that a person who commits a violation to which this section applies is liable to the customer in an amount equal to twenty-five dollars and actual damages the customer sustains from the violation.

Under § 425.308(1), STATS., a prevailing customer in an action under the Wisconsin Consumer Act "shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney fees." The statute also sets forth six factors the trial court may consider in determining the amount of the fee. Section 425.308(2), STATS.; see also First Wisconsin Nat'l Bank v. Nicolaou, 113 Wis. 2d 524, 537–38, 335 N.W.2d 390, 396–97 (1983) (noting that while the award of attorney fees under § 425.308 is mandatory, the amount is left to the trial court's discretion, and the trial court is not required to specifically consider all six factors in exercising its discretion).

[6] On the first day of trial, because LeBakken's essential witnesses were unable to appear, LeBakken moved to voluntarily dismiss the complaint.

## II. Analysis

At the outset, we acknowledge our legislature's directive to liberally construe the Act to promote its underlying purposes and policies which include protecting the defaulting customer from merchants' unfair, deceptive, false, misleading, and unconscionable practices; and permitting and encouraging the development of fair and economically sound consumer practices in consumer transactions. Sections 421.102(2)(b) and (c), STATS. Keeping this charge in mind, we must determine if the transaction between Warnell and LeBakken is a consumer credit transaction subject to the Act. Further, in examining the agreement here, we will look beyond the form of the transaction and scrutinize its substance. *See Rent-A-Center, Inc. v. Hall*, 181 Wis. 2d 243, 253, 510 N.W.2d 789, 794 (Ct. App. 1993).

Section 425.109(1), STATS., governs pleadings in consumer credit transactions. If the creditor's complaint fails to comply with the statutory pleading requirements, the circuit court may not enter judgment upon the complaint. Section 425.109(3), STATS. LeBakken's complaint violates § 425.109(1)(d) because it omits the figures necessary for computation of the amount due. Accordingly, if the transaction is subject to the Act, the complaint is deficient, and Warnell, as a prevailing party under the Act, is entitled to recover his costs and reasonable attorney fees. *See* § 425.308(1), STATS.

In its decision, the trial court noted that the difference between *Rent-A-Center* and this case is that Warnell "did not have to pay all of the monthly lease payments . . . to take ownership of the refrigerator." In other words, it found *Rent-A-Center* unpersuasive and

distinguishable, reasoning that, unlike in *Rent-A-Center*, the agreement between LeBakken and Warnell contains an early purchase option removing it from the Act.

At the hearing on Warnell's renewed motion, the trial court found that the transaction did not meet the elements of a consumer lease or a consumer credit transaction because:

> the consumer could walk away after one week or one month or any other time or purchase it at any time for an agreed upon fee that's less than all of the payments, but it also seems as a question of fairness to the customer that if a place were going to set this up and say . . . at the end of twenty months in this case we get the refrigerator back so it would be a pure lease like the lease of an apartment or something, then they'll say well, couldn't I buy it from you for a little something? I mean . . . it seems to me that the major intent of at least Lebakkens in this agreement though their title is Rent-To-Own, is a lease.

■ Whether the consumer rental agreement between LeBakken and Warnell is a consumer credit transaction subject to the Act is a mixed question of fact and law. *See Palacios v. ABC TV & Stereo Rental*, 123 Wis. 2d 79, 83, 365 N.W.2d 882, 885 (Ct. App. 1985). On appeal, we will not upset the trial court's findings of fact unless they are clearly erroneous, but whether the facts meet the elements of a consumer credit transaction is a question of law. *See id.*; *see also* § 805.17(2), STATS. (setting forth standard of review for trial court's factual findings). Also, the interpretation of the agreement between LeBakken and Warnell is a question of

law we review de novo. *See Yauger v. Skiing Enters.*, 206 Wis. 2d 76, 80, 557 N.W.2d 60, 61 (1996).

LeBakken concedes that its agreement with Warnell does not comply with the Act, but insists that compliance was not required because its agreement was not a "consumer credit transaction" subject to the Act. We disagree. Under § 421.301(10), STATS., a consumer credit transaction is a:

> consumer transaction between a merchant and a customer in which . . . personal property . . . is acquired on credit and the customer's obligation is payable in instalments or for which credit a finance charge is or may be imposed . . . . *The term includes* consumer credit sales, consumer loans, *consumer leases* and transactions pursuant to open-end credit plans. (Emphasis added.)

Warnell argues that his transaction with LeBakken meets the definition of a consumer transaction because as a customer, he acquired personal property on credit from LeBakken, a merchant, and his obligation included a finance charge payable in installments. Alternatively, he argues that the transaction constitutes a "consumer lease," which is a consumer credit transaction under subsec. (10). LeBakken, on the other hand, contends that the agreement represents two potential transactions. First, it claims that it represents a "true rental agreement" unless Warnell exercises the option to purchase. Second, it argues that if Warnell exercises the option to purchase, it is a sale. Because the transaction meets the statutory elements of both a consumer credit sale and a consumer lease, we conclude that the transaction constitutes a consumer credit transaction.

## A. Consumer Credit Sale

Under § 421.301(10), STATS., a "consumer credit sale" is also a "consumer credit transaction" subject to the Act. *See Palacios*, 123 Wis. 2d at 84, 365 N.W.2d at 885. A "consumer credit sale" under § 421.301(9) is:

> a sale of goods . . . where the debt is payable in instalments or a finance charge is imposed and *includes any agreement in the form of a . . . lease of goods . . . if the . . . lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the goods or real property involved and it is agreed that the . . . lessee will become, or for no other or a nominal consideration has the option to become, the owner of the goods . . . upon full compliance with the terms of the agreement.* (Emphasis added.)

For the agreement here to fall under subsec. (9), the agreement must meet two prongs. *See Rent-A-Center*, 181 Wis. 2d at 250–51, 510 N.W.2d at 792–93. First, Warnell must have either paid or agreed to pay a "sum substantially equivalent to or in excess of the aggregate value of the goods." *See id.* Warnell had two options to purchase. If he exercised the early purchase option, he could pay 50% of the difference between the "total of all payments to acquire ownership and the total amount of rental payments paid." *See id.* If Warnell had purchased the refrigerator after one month, he would have paid $526.95 for a refrigerator the agreement notes is worth $551.08.[7] That amount is

---

[7] The agreement defines the "total of all rental payments" as the "total of rental payments and purchase payment. This is the total amount necessary to acquire ownership." The "total of

substantially equivalent to the stated value of the goods. To exercise his option to purchase at the end of twenty months, Warnell would have paid $1,102.15. That amount is in excess of the refrigerator's stated value. The first prong is met. *See id.*

To meet the second prong, the agreement must provide that Warnell "will become, or for no other or a nominal consideration has the option to become, the owner of the goods . . . upon full compliance with the terms of the agreement." *See id.* The agreement provides that Warnell could fully comply with the agreement if he exercised the option to become the refrigerator's owner at the agreement's end. At that time, the agreement required him to pay additional compensation of $179.95 after paying for twenty months, so he could not become the owner for "no consideration." Therefore, we focus on whether Warnell could purchase the refrigerator for "nominal consideration" under the statute.

Liberally construing the Act to further our legislature's intent, we consider the four tests Wisconsin law uses to consider whether the option price here is "nominal." *See Rent-A-Center*, 181 Wis. 2d at 255, 510 N.W.2d at 794–95; *see also Burney v. Thorn Americas, Inc.*, 944 F. Supp. 762, 770–71 (E.D. Wis. 1996) (discussing and applying *Rent-A-Center*). To determine if the option price here is nominal, we may consider: (1) the option price's relation to the item's fair market value; (2) the option price's relation to the total rental

all rental payments" is $1,102.15. The $526.95 figure represents 50% of the difference between "the total of all payments," $1,102.15, and $48.25, the total amount of rental payments Warnell would have made after one month ($48.25 x 50% = $24.13; $1,102.15 x 50% = $551.08; $551.08 - $24.13 = $526.95).

payments; (3) the relationship between the option price and the original price of the goods; or (4) whether the lessee has "any sensible alternative" to exercising the option. *See Rent-A-Center*, 181 Wis. 2d at 255, 510 N.W.2d at 794–95; *see also Burney*, 944 F. Supp. at 770–71. Here, anyone seeking to purchase the refrigerator at the agreement's end who had already paid $922.50 for a refrigerator would have "no sensible alternative" than to pay $179.95 and become the owner of the goods. *See Rent-A-Center*, 181 Wis. 2d at 256, 510 N.W.2d at 795. Thus, the option price is nominal, and the agreement here meets subsec. (9)'s second prong.

As the trial court observed, the agreement in *Rent-A-Center* did not contain an early purchase option. However, we do not deem that distinction fatal. Construing the statute liberally to promote the underlying purposes of the Act and looking beyond the transaction's form to its substance, we conclude that the agreement's early purchase option, one allowing Warnell to buy the refrigerator for as little as $526.95 if he exercised the option after only one month, does not remove the agreement from the subsec. (9) definition of a consumer credit sale. The agreement still contains an option that meets the second prong of subsec. (9). *See id.* We decline to permit a merchant to so easily circumvent the Act's requirements by merely including an early purchase option in a consumer agreement which also contains the option, which, if exercised, constitutes a consu ner credit transaction. Accordingly, the agreement here is a consumer credit transaction under subsec. (10).

## B. Consumer Lease

A consumer lease is also a consumer credit transaction under § 421.301(10), STATS. *See Palacios*, 123

Wis. 2d at 87, 365 N.W.2d at 886. Therefore, if the transaction here is a consumer lease, it is also a consumer credit transaction subject to the Act. A consumer lease is "a lease of goods which a merchant makes to a customer for a term exceeding 4 months." Section 421.301(11), STATS. A customer is a person who seeks or acquires personal property, § 421.301(17), STATS., and a merchant is a person who regularly advertises, distributes, supplies or deals in personal property in a manner directly or indirectly resulting in or leading to a consumer transaction. Section 421.301(25), STATS. Under § 411.103(1)(j), STATS., a lease is a transfer of the right to possession and use of goods for a term in return for consideration.[8]

Warnell is a customer, and LeBakken is a merchant. LeBakken appears to concede that its consumer rental agreement with Warnell is a lease, noting that it gave Warnell the right to possession and use of the refrigerator for a specified term and that Warnell paid consideration for that right. It claims, however, that the lease was not for a period exceeding four months because Warnell could exercise the early option and purchase the refrigerator at any time. We disagree.

The agreement here allowed Warnell to lease the refrigerator for up to twenty months, but to exercise his option to buy either during the lease term or at the

---

[8] The Wisconsin Consumer Act's general definition section, § 421.301, STATS., does not define the term "lease." Section 421.103(2), STATS., provides that if ch. 421, STATS., does not define a term, we must look to ch. 411, STATS., for a definition: "Unless terms used in chs. 421 to 427 are defined by particular provisions of chs. 421 to 427, they shall have the meaning given them in chs. 401 to 411 and 429, if they are defined in chs. 401 to 411 and 429."

term's end. In contrast, LeBakken could only terminate the agreement if Warnell did not make his payments or otherwise breached the agreement. In other words, LeBakken was bound to the agreement's rental component for twenty months unless Warnell breached. Therefore, the agreement reflects that LeBakken leased the refrigerator to Warnell for a term exceeding four months.

Having held that the transaction is a consumer credit transaction subject to the Act, there is no question that LeBakken's complaint is deficient under § 425.109(1)(d), STATS., because it fails to include the figures necessary for Warnell to compute the total amount due. *See Household Fin. Corp. v. Kohl,* 173 Wis. 2d 798, 802–03, 496 N.W.2d 708, 710–11 (Ct. App. 1993). Therefore, Warnell is a prevailing customer under the Act and is entitled to costs and reasonable attorney fees pursuant to § 425.308(1), STATS.

Because the transaction is subject to the Act, we reverse the order and remand the matter to the trial court with directions to determine and award Warnell costs and reasonable attorney fees pursuant to § 425.308, STATS. *See First Wisconsin Nat'l Bank v. Nicolaou,* 113 Wis. 2d 524, 541, 335 N.W.2d 390, 398 (1983) (providing that customer who prevails under the Act is entitled to costs and reasonable attorney fees).

*By the Court.*—Order reversed and cause remanded with directions.

HOOVER, J. *(concurring).* I concur with the majority's implicit conclusion that the Wisconsin Consumer Act defines a lease from the perspective of the merchant's obligation period. I accordingly agree that

LeBakken's conditional obligation to permit Warnell to have possession of the appliance for twenty months renders this a consumer lease under § 421.301(11), STATS. I do not agree, however, that we can determine the transaction to be a consumer credit sale under § 421.301(10).

I concur with the majority's construction of § 421.301(9), STATS., which defines a consumer credit sale. This transaction meets the first "prong" described in the majority opinion in that Warnell agreed to pay "a sum substantially equivalent to or in excess of the aggregate value of the goods or real property involved,"[1] as the majority opinion explains. I cannot, however join in the conclusion that the second requirement under the statute, option to purchase for a nominal consideration, is also satisfied.

*Rent-A-Center, Inc. v. Hall*, 181 Wis. 2d 243, 255–56, 510 N.W.2d 789, 794–95 (Ct. App. 1993), provides four factors[2] that may be considered in

---

[1] *See* § 421.301(9), STATS.

[2] *See* majority at 592–93. The first factor is inapplicable because no evidence of the refrigerator's fair market value was presented at trial. The option price of $179.95 is more than 18% of the $992.20 total rental amount. The option price is almost 33% of the $551.08 cash price for which the refrigerator could have been purchased. It seems at the very least a fair conclusion that the option is not nominal under the latter two factors.

The majority, by enumerating the *Rent-A-Center, Inc. v. Hall*, 181 Wis. 2d 243, 255–56, 510 N.W.2d 789, 794–95 (Ct. App. 1993), factors in the disjunctive, suggests that a finding that an option payment is nominal may rest on any one of the four factors. I am not confident that *Rent-A-Center* necessarily bears such an interpretation. As an example, the *Rent-A-Center* court discussed the factors in the conjunctive, perhaps implying that weighing all four factors may be appropriate. It is true that the court was ultimately persuaded by a single factor in con-

determining whether the purchase option price is nominal. The majority relies on the fourth factor; whether the lessee has "any sensible alternative" to exercising the option. Whether an alternative exists to exercising the purchase option and whether the alternative is sensible seem to be questions of fact rather than law. No evidence was presented on this factor. I am not prepared to say on a record that did not address the issue that, as a matter of law, had the lease been fulfilled, Warnell would have had no sensible alternative but to pay $179.95 for a twenty-month-old refrigerator originally valued at $551.08. I would thus decide this case only on the consumer lease issue.

cluding that the optional purchase price was nominal. It is equally true, however, that the court considered each of the factors in turn.